J-A10039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK T. STORMS | : | |
| | : | |
| Appellant | : | No. 193 EDA 2023 |

Appeal from the PCRA Order Entered January 19, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004007-2016

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED OCTOBER 18, 2024**

Appellant, Mark Storms, appeals from the order of the Court of Common Pleas of Montgomery County dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*. ("PCRA"), collaterally challenging his convictions for voluntary manslaughter and recklessly endangering another person ("REAP").[1] Appellant challenges the PCRA court's ruling that a hearing was unnecessary.

On direct appeal, this Court relied on the facts of the case as set forth by the trial court:

[Appellant] shot and killed 27–year–old Robert E. Braxton, III [("Decedent")], on April 24, 2016, during a Sunday morning

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Specifically, a jury found Appellant guilty of voluntary manslaughter - unreasonable belief self-defense, 18 Pa.C.S. § 2503(b), and of recklessly endangering another person, 18 Pa.C.S. § 2705.

service at Keystone Fellowship Church in Montgomery Township, Montgomery County. The events leading to the shooting, which occurred in the midst of numerous parishioners, began when [Decedent] entered the church in an agitated state shortly after the service had begun and moved into a row of chairs in the overflow seating area. A fellow parishioner in the row behind tapped [Decedent] on the back to alert him that he may be in a section of seats already occupied by others who had momentarily left. [Decedent] told the person not to touch him, using obscene language, and created a verbal disturbance that prompted ushers to try to calm him down.[2] During this time, [Decedent] told anyone who attempted to intervene to leave him alone. An associate pastor, seeing that the ushers' efforts only exacerbated [Decedent's] agitation, had them back away and directed someone to call the police.

[2] [Appellant] told investigators he saw [Decedent] pushing the parishioner, but the parishioner testified at trial that [Decedent] never touched him nor got close to him.

[Appellant], who was sitting nearby with his wife and young son, did not believe enough was being done and decided to intervene.[3] He was armed at the time with a loaded 9-millimeter semi-automatic pistol concealed in a holster on his right hip.[4] [Appellant] had observed [Decedent] become agitated each time someone addressed him and believed [Decedent] would not leave the church without violence.[5] He admittedly approached [Decedent] not with the intent to calm him down but to get him out of the church.

[3] [Appellant] had no position of authority with the church at the time and was not a law enforcement officer.

[4] [Appellant] had a permit to carry a concealed weapon. As soon will become relevant, he also obtained a gold concealed weapon permit "badge." The unofficial badge is not issued in connection with the permit but can be obtained on the Internet.

[5] While [Appellant] attempted in his trial testimony to distance himself from his statement to investigators that he did not think [Decedent] would leave without violence, the jury as fact-finder was free to disbelieve his self-serving testimony.

- 2 -

With the two separated by a row of chairs, [Appellant] asked [Decedent] to go outside with him. When [Decedent] refused, [Appellant] flashed his unofficial concealed weapon permit badge. [Decedent] recognized it as a fake, telling [Appellant] as much in colorful language. [Appellant] then revealed his 9–millimeter pistol. [Decedent] reacted by punching [Appellant] in the face and proceeding toward him. [Appellant] absorbed the blow and, rather than retreat down the open aisle behind him or call for help from the hundreds of people in church, squared himself into a ready fire stance and shot the unarmed [Decedent] twice.[6] One of the bullets pierced [Decedent]'s heart and he died soon thereafter despite life-saving efforts by fellow parishioners and emergency medical responders.

> [6] [Appellant] testified that [Decedent] did not have a visible weapon and no trial witness stated they ever saw [Decedent] in possession of a weapon.

*Commonwealth v. Storms*, No. 1860 EDA 2017, 2018 WL 1280933, at *1–

*2 (Pa. Super., filed Mar. 13, 2018).

This Court summarized the procedural history:

Appellant was arrested and charged with voluntary manslaughter and REAP in reference to the other parishioners. At the three-day jury trial, the following testimony was elicited. After the ushers backed away and left Decedent alone, one of the pastors, Rusty S. Williams, III, testified that he was not yelling. N.T., 11/1/16, at 288–89. However, after Appellant approached and asked Decedent to go outside, Williams testified he could see Decedent starting to yell and that "things were escalating again." N.T., 11/1/16, at 289–90; *see also* N.T., 11/2/16, at 16–17, 19 (Joseph McDevitt, another witness, testified that Decedent had calmed down prior to Appellant speaking with him). Williams' police statement, which the Commonwealth used to refresh his recollection and was admitted into evidence without objection, also reflected Williams' belief that Appellant's "actions escalated the situation more than what it had to be." N.T., 11/1/16, at 315; Commonwealth's Ex. 30.

When the incident escalated and Decedent punched Appellant, Appellant shot Decedent from a distance of about eight feet. N.T., 11/1/16, at 133. Lauren Hendrie, another witness, testified that

no one and nothing impeded Appellant's ability to retreat from the situation. *Id.* at 46. Jeffrey Lemon similarly testified that no person and no thing was impeding Appellant from leaving the area. *Id.* at 166.

Appellant claimed self-defense. Appellant testified he had no opportunity to retreat after being punched. N.T., 11/2/16, at 59. Appellant also believed that Decedent was "younger, bigger, faster, and stronger" than him, could kill him, and would take his gun and use it. *Id.* at 57.

The jury found Appellant guilty and the court ordered a pre-sentence investigation and held a hearing … The court imposed its sentence of ten to twenty years' imprisonment for voluntary manslaughter, followed by two years' probation for REAP. The court denied Appellant's post-sentence motion.

*Storms*, 2018 WL 1280933, at *2.

In his direct appeal, Appellant raised a challenge to the sufficiency of the evidence disproving his affirmative defense of self-defense and two challenges to the discretionary aspects of sentencing. This Court affirmed by memorandum filed on March 13, 2018. The Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on February 26, 2019. *See Commonwealth v. Storms*, 203 A.3d 211 (Pa. 2019) (Table). Appellant's judgment of sentence became final on May 17, 2019, when the time for filing a petition for a writ of certiorari in the United States Supreme Court passed. *See* U.S.Sup.Ct. Rule 13.

On April 14, 2020, Appellant filed *pro se* a timely first PCRA petition in which he raised, *inter alia*, 14 separate claims of ineffective assistance of prior counsel. *See* Appellant's *Pro Se* PCRA Petition; Trial Court Record, 249-281. The Honorable Gary S. Silow, sitting as the PCRA court after having been the

trial judge, appointed counsel Ben Datika, Esquire to represent Appellant. Order, 5/29/20; Trial Court Record, 283. On May 3, 2022, counsel filed an amended petition alleging prior counsel's ineffective assistance separated into twenty-one broadly stated categories. *See* Amended Petition, 1-71; Trial Court Record, 308-378. The PCRA court ordered the Commonwealth to file a response to the petition. Order, 5/23/22; Trial Court Record, 380. On September 23, 2022, the Commonwealth filed an Answer and Motion to Dismiss the Petition. *See* Commonwealth's Answer, 1-35; Trial Court Record, 392-426. On October 25, 2022, the PCRA court issued Notice of Intent to Dismiss the Amended Petition, stating:

> … after an independent review of the record, this Court concludes that defendant is not entitled to the relief he seeks, or otherwise to any post-conviction relief, because the claims asserted in the amended petition lack merit and/or defendant cannot demonstrate prejudice in connection therewith, and the pro se claim of trial counsel's alleged conflict of interest, which is not included in the amended petition, is undeveloped.

PCRA Court's Notice of Intent to Dismiss, 2; Trial Court Record, 429. Appellant filed a response to the notice adding additional witness certifications by counsel and arguing that an evidentiary hearing was warranted. Appellant's Response to Notice of Intent to Dismiss, 1-10; Trial Court Record, 431-440. On December 15, 2022, the PCRA court dismissed the Amended Petition. Order, 12/15/22; Trial Court Record, 447. The order was entered on the docket on January 19, 2023.

Appellant filed a timely *pro se* notice of appeal.[2] The Honorable Melissa S. Sterling, assigned to replace Judge Silow as the PCRA court following Judge Silow's retirement, ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Order, 3/29/23; Trial Court Record, 448. The Rule 1925(b) order was entered on the docket on March 29, 2023, with a date of service by eService to appointed PCRA counsel of March 30, 3023. *See* Trial Court Record, 463. In the meantime, however, new appellate PCRA counsel, on March 9, 2023, had filed an entry of appearance in this Court. It does not appear that an entry of appearance was filed in the Court of Common Pleas, but, we note, the Rule 1925(b) order includes appellate PCRA counsel as a person served a copy of the order by email. No response to the Rule 1925(b) order was filed. On May 31, 2023, the opinion of the PCRA court, noting that all appellate claims were waived under Rule 1925(b)(4)(vii) and requesting this Court to affirm the order dismissing the PCRA petition, was entered onto the docket, with a service by eService on appointed PCRA counsel on June 1, 2023. *See* Trial Court Record, 463.

_____

[2] Appellant prematurely filed a *pro se* notice of appeal on November 22, 2022. On January 19, 2023, a *pro se* notice of appeal from the December 15, 2022 Order was filed and entered on the docket. The second notice of appeal appears to have been erroneously filed in Superior Court on January 9, 2023, and was transmitted to the Court of Common Pleas in accordance with Pa.R.A.P. 905(a)(4). We deem this *pro se* notice timely and from the appropriate order entered on the docket on January 19, 2023. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

Appellant raises two broadly framed questions on appeal, as follows:

> I. WHETHER THE PCRA COURT ABUSED ITS DESCRETION IN NOT HAVING AN EVIDENTIARY HEARING WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED? …
>
> II. WHETHER THE PETITIONER WAS PREJUDICED BY TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE NOT ONLY BY THEIR ACTION BUT ALSO INACTION?

Appellant's Brief, 7.

On January 4, 2024, the Commonwealth filed an Application for Remand seeking a remand for the apparent ineffective assistance by appellate PCRA counsel. Rule 1925 states, in pertinent part:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3). On February 6, 2024, this Court deferred the Commonwealth's Application to the panel assigned to decide the merits of the appeal. The Commonwealth subsequently filed a brief in which it repeated its request for a remand and argued Appellant's brief "compounds his failure to file a concise statement by including only undeveloped and unsupported conclusions." Appellee's Brief, 7.

We conclude that there was either a breakdown in court processes or *per se* ineffective assistance by counsel that now hampers our review of

Appellant's myriad allegations of ineffective assistance.[3] Therefore, we are remanding this matter for the PCRA court to hold a hearing to determine if counsel's failure to properly enter an appearance or provide a working email address was the cause of the breakdown of communication around the court's Rule 1925(b) order. If so, the PCRA court should remove current counsel, appoint new counsel and issue a new order pursuant to Rule 1925(b) so that it may prepare and file an opinion in due course. If counsel was not at fault or the lower court was more at fault for the lack of communicating the Rule 1925(b) order to counsel, then counsel should not be removed, but permitted 21 days to file a concise statement of errors complained of on appeal. The PCRA court should then prepare and file its opinion in due course.

Accordingly, we remand the matter for a hearing and ultimately the filing of a new Rule 1925(a) opinion by the PCRA court. Upon the filing of that opinion, we direct the prothonotary of this Court to issue a new briefing schedule.

_____

[3] In Appellant's initial brief, filed on October 10, 2023, appellate PCRA counsel states he was not a "listed recipient of service" on the Court of Common Pleas docket. Appellant's Brief, 19. We cannot determine whether the court or counsel's filing of the praecipe of appearance are at fault. Appellate PCRA counsel also states that the email address on the order "is not correct and therefore the Order was not served." *Id*. We are more inclined to believe the order was not received. We cannot determine whether the incorrect email address is a typo on the order that did not carry over to the email service or reflects that the order was actually sent to an incorrect email address, nor who is at fault for providing the incorrect email address.

Case remanded for further proceedings consistent with this Memorandum. Jurisdiction retained.